1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY J. NEWELL,                    )    Case No. 12cv1696-GPC (BLM)
                                           )
12                      Plaintiff,         )    **ORDER GRANTING IN PART AND**
                                           )    **DENYING IN PART PLAINTIFF'S**
13   v.                                    )    **MOTION TO COMPEL**
                                           )
14   COUNTY OF SAN DIEGO, ELIZABETH        )
     PALMER AND DOES 1-100 inclusive,      )    [ECF No. 16]
15                                         )
                        Defendants.        )
16   ─────────────────────────────────    )

17

18        On November 29, 2012, Eugene S. Thompson, counsel for Plaintiff, and David L.

19   Brodie, counsel for Defendants, contacted the Court's chambers regarding a discovery

20   dispute.  Counsel informed the court that Defendants objected to certain requests due to

21   the "official information" privilege.  After speaking with the Court, Mr. Thompson and Mr.

22   Brodie continued to meet and confer in an attempt to resolve their differences.  On January

23   30, 2013, Mr. Thompson again contacted the Court's chambers to say that the parties were

24   at an impasse.

25        On February 1, 2013, the Court ordered a special briefing schedule for the discovery

26   dispute and assigned a hearing date noting that unless the Court directed otherwise in

27   advance, the discovery dispute would be resolved without oral argument and no personal

28   appearances were required.  ECF No. 13.  Pursuant to the Court's orders, the parties filed

1   a Joint Discovery Conference Statement on February 15, 2013.  ECF No. 16.  Also on

2   February 15, 2013, Defendants lodged a privilege log, a declaration of an agency official,

3   and its responses to Plaintiff's supplemental request for production of documents with

4   chambers.  On February 20, 2013, Defendants delivered the disputed documents to the

5   Court's chambers for in camera review.

6          The Court has reviewed in camera all of the documents submitted by the parties.

7   for the reasons detailed below, Plaintiff's request for documents is **GRANTED IN PART**

8   **AND DENIED IN PART**.

9                                    **BACKGROUND**

10         On July 9, 2012, Defendants removed the instant matter to this Court from the

11  Superior Court of the State of California.  ECF No. 1.  Plaintiff's complaint alleges that

12  Defendants violated Plaintiff's civil rights. ECF No. 1-1. Specifically, Plaintiff alleges that he

13  went to the Chula Vista branch of the San Diego Superior Court to see if there were any

14  excess vehicles available for purchase.  Id. at 3.  When Plaintiff arrived at the court, he

15  properly parked his car in a handicap parking space, exited his vehicle, and approached a

16  chain link fence where he saw several Ford Crown Victoria vehicles that he thought might

17  be for sale.  Id.  Once at the fence, Plaintiff proceeded to take photographs of the cars.  Id.

18  Plaintiff alleges that as he made his way to the garage to obtain additional information

19  about the cars, he was approached by Defendant Palmer who blocked his path and inquired

20  as to why Plaintiff was parked in a handicap space.  Id. at 4.  When Plaintiff explained what

21  he was doing, Defendant Palmer informed Plaintiff that she did not believe him and asked

22  him to "shut up," "sit his ass on the bumper of his" car, and not to move.  Id.  Plaintiff

23  alleges that this occurred after he informed Defendant Palmer that he was a retired San

24  Diego Police Officer.  Id.

25         Plaintiff alleges that he complied with Defendant Palmer's orders and that she made

26  a call and additional deputies soon appeared.  Id.  Plaintiff next alleges that Defendant

27  Palmer opened his car door and grabbed his wallet without his consent, and that Defendant

28  Palmer would not allow Plaintiff to stand up and stretch when he began suffering from back

spasms. Id. Plaintiff states that Defendant Palmer search his wallet and questioned him as to who Lisa Khan (Plaintiff's significant other) was and whether or not she was born in the United States. Id. Defendant Palmer next ordered a Deputy Sheriff to conduct a pat down on Plaintiff, which took place in full view of the general public, and proceeded to ask Plaintiff for his social security number and where he was born. Id. Defendant Palmer then allegedly told Plaintiff to stand for a photo as she continued to scroll through the pictures on Plaintiff's cell phone without his consent. Id. at 4-5. Next, Defendant Palmer ordered a Deputy Sheriff to run Plaintiff's license plate number as she searched his car. Id. at 5. Defendant Palmer soon informed Plaintiff that his vehicle registration was expired, he had an outstanding warrant for his arrest, and his license was suspended. Id. Plaintiff alleges that Defendant Palmer then inquired if Plaintiff's license was suspended due to his failure to make child support payments. Id. Defendant Palmer next had a Deputy write Plaintiff up for a moving violation citation for driving with a suspended license. Id. Finally, Plaintiff alleges that Defendant Palmer inquired as to whether or not Plaintiff had any scars or tattoos, ordered Plaintiff to delete any photographs that he had taken of the cars at the courthouse, and confiscated his car keys with a warning that he had twenty minutes to get a ride home before his car would be towed. Id. Plaintiff was then released without being charged with a crime. Id.

During the discovery period, Plaintiff requested that Defendants produce: "1. Any internal departmental investigation by the San Diego Sheriff's Department pertaining to the November 29, 2011 detention of NEWELL including but not limited to any and all statements made by witnesses who participated or saw the detention; 2. Any and all citizens complaints made against PALMER from November 1, 2007 to the present including but not limited to any allegations of illegal detention; 3. Any and all documents relating to or referring to any departmental discipline or reprimands of PALMER from November 1, 2007 to the present; 4. Any and all complaints made by NEWELL to the San Diego Sheriff's Department regarding his detention on November 29, 2011 at the Chula Vista courthouse; and 5. Any and all performance evaluations of PALMER from January 1, 2007 to the present." ECF No. 16 at

2.

Defendants agreed to produce documents responsive to requests one and four [id. at 7][1] and Plaintiff did not object so those requests are not addressed in this Order.  With regard to the remaining requests, Defendants identified seven responsive Internal Affairs case files but refused to produce them, asserting various objections and privileges including privacy and the "Official information privilege."  See Defendant's privilege log and Defendant's Responses to Supplemental Request for Production of Documents. Defendants submitted the identified case files to the Court for an in camera review.  The Court has reviewed all of the submitted documents.

### LEGAL STANDARD

The federal rules generally allow for broad discovery authorizing parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).  To the extent that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2).  Limits should also be imposed where the burden or expense outweighs the likely benefits.  Id.  How and when to so limit discovery, however, remains in the court's discretion.

Federal common law recognizes a "qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v. U.S. Dist. Ct., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976)).  The party asserting the privilege has the burden of proving the privilege.  Kelly v. City of San Jose, 114 F.R.D. 653, 662 (N.D. Cal. 1987); see also Hampton v. City of San Diego, 147 F.R.D. 227, 231 (S.D. Cal.

---

[1]Defendants agreed to "produce documents and recordings containing Plaintiff's statement, as well as all statements of percipient witnesses, including Sheriff's employees involved in this case," but not any "documents reflecting the thoughts, analysis and conclusions of the IA investigator [or] any discipline imposed . . . because these documents are not probative as to the truth of Plaintiff's allegations of unlawful detention and search." Id. at 7.  Plaintiff did not object to this response.

1993) ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653 (N.D. Cal. 1987) and <u>Miller v. Pancucci</u>, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); <u>Stewart v. City of San Diego</u>, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying <u>Kelly</u>).  To determine whether the privilege applies in a particular case, "courts must weigh the potential benefits of disclosure against the potential disadvantages." <u>Sanchez</u>, 936 F.2d at 1034.    The <u>Kelly</u> court provided a non-exhaustive list of factors (taken from <u>Frankenhauser v. Rizzo</u>, 59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.  <u>Kelly</u>, 114 F.R.D. at 663.

In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." <u>Kelly</u>, 114 F.R.D. at 663.   In civil rights cases against police departments, the balancing test should be "moderately pre-weighted in favor of disclosure." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting <u>Kelly</u>, 114 F.R.D. at 661).

## **DISCUSSION**

Plaintiff seeks to compel production of all citizen's complaints made against Defendant Palmer from November 1, 2007 to the present, all documents relating to any

1   departmental discipline or reprimands of Defendant Palmer from November 1, 2007 to the
2   present, and all performance evaluations of Defendant Palmer from January 1, 2007 to the
3   present.  ECF No. 16 at 2.

4          In his complaint, Plaintiff alleges that on the date of the incident, Defendant Palmer
5   was discourteous, searched his phone, wallet, and car without his consent, and improperly
6   detained him.  ECF No. 1-1 at 4-5.  Plaintiff describes a situation where Defendant Palmer
7   acted aggressively, cursed, confiscated his identification and car keys, improperly detained
8   him, and eventually allowed Plaintiff to leave without charging him with a crime.  Id.
9   Plaintiff claims that the requested documents are "essential in ascertaining the truth of what
10  happened on November 29, 2011" and key to assessing Defendant Palmer's credibility and
11  history of "being dishonest in terms of her dealings with members of the general public."
12  ECF No. 16 at 2-3.  In addition, Plaintiff argues that certain requested documents may "lead
13  to admissible evidence including references to other uncontacted potential witnesses or help
14  to refresh witnesses' recollection of the circumstances" surrounding Plaintiff's incident.  Id.
15  Plaintiff notes that it would be impossible or impracticable to acquire the requested
16  information through alternative means.  Id. at 5.

17         Defendants contend that Plaintiff has failed to show that the requested documents
18  are relevant to the issues in this case and that Plaintiff should not be permitted "to go on
19  a fishing expedition to see what can be uncovered from Palmer's IA/personnel history."  Id.
20  at 6.  Defendants further contend that the opinions, conclusions, and analysis of Internal
21  Affairs investigators as well as any discipline imposed should not be disclosed "because
22  these documents are not probative as to the truth of Plaintiff's allegations of unlawful
23  detention and search."  Id.

24  **A.    Analysis/Documents Reviewed**

25         Before the Court undertakes an in camera review of the lodged documents and
26  conducts a balancing of interests, Defendants must make a substantial threshold showing
27  in order to invoke the official information privilege.  See ECF No. 13 at 4; see also Soto, 162
28  F.R.D. at 613; Hampton 147 F.R.D. at 231; and Dowell v. Griffin, 275 F.R.D. 613, *616 (S.D.

Cal. Aug. 17, 2011).  To meet this showing, Defendants "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." Dowel, 275 F.R.D. at *616.  Specifically, "[i]n order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 670).

Here, Defendants have failed to meet the threshold burden because they have not included elements two, four or five in their affidavit. See Decl. of Anthony Giammarino. The affiant does not state that he personally reviewed the material in question, explain why a protective order would be insufficient to protect significant governmental or privacy interest, or project how much harm would be done to the threatened interests if disclosure were made. Id. Since Defendants have not met their burden, the Court is not required to conduct an in camera review. Nevertheless, the Court has performed an in camera review of the requested documents and determines that the following files contain relevant information[2]: 1) File/Bates Number IA 001-046, 2) File/Bates Number IA 047-081, and 3) File/Bates Number IA 197-256. The Court finds that the following files do not contain relevant information and therefore need not be produced: 1) File/Bates Number IA 082-102,

_____

[2]File/Bates Number IA 257-384 concerns the investigation into Plaintiff's claims and will not be discussed as explained above since they are responsive to Plaintiff's first and fourth requests and Defendant has agreed to produce the responsive documents with no objection from Plaintiff.

2) File/Bates Number IA 103-190, and 3) File/Bates Number IA 191-196.  With regard to the files containing relevant information, the Court must next consider whether the asserted privileges prevent the production of the relevant information.

Initially, the Court notes that Defendants have failed to adequately explain how disclosure of the relevant files would harm a significant government or privacy interest with the employment of a protective order and appropriate redactions.  ECF No. 16 at 6-9. Defendants merely state that disclosure of the internal documents may cause supervisors to make different disciplinary decisions and "may have a chilling effect on what supervisors put in writing concerning employees," which would negatively affect the overall functioning of the Sheriff's Department, and which is not helped by a protective order.  Id. at 8. However, Defendants fail to provide any support for this assertion and, in fact, courts have rejected the theory.  See Soto, 162 F.R.D. at 612 (noting that Kelly "debunks the theory that officers will be less truthful or forthright in expressing their opinions if there is a risk of future disclosure" and concurring with Kelly's reasoning) (quoting Kelly, 114 F.R.D. at 665-666)[3]; see also Watson v. Albin, 2008 WL 1925257 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing Kelly, 114 F.R.D at 672).

Additionally, a weighing of "the potential benefits of disclosure against the potential disadvantages" and consideration of the Kelly factors supports the disclosure of the relevant documents identified above.  Sanchez, 936 F. 2d at 1034.  Specifically, (1) the Court is not convinced that disclosure will thwart governmental processes by discouraging citizens from giving the government information, especially given that identifying information will be

---

[3]The quoted section of Kelly reads "since there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there are no justifications for offering near absolute protection to the statements that go into such reports or the opinions and recommendations that conclude them. In fact ... such material should be presumptively discoverable when a plaintiff makes a proper showing of relevance." Kelly, 114 F.R.D. at 665-666.

1   limited to the name and all personal information will be redacted as described in section B;

2   (2) there will be little impact upon persons who have given information as a result of having

3   their identities disclosed because the Court will allow Defendants to redact personal

4   information as explained further below in section B; (3) as stated above, Courts have not

5   found any support for the contention that government self-evaluation or other

6   communications will be chilled by disclosure; (4) the fact that the information sought is

7   factual data and evaluative summary does not favor either side as the data is still based on

8   factual investigations which are relevant and likely trustworthy[4]; (5) the Court is not aware

9   that Plaintiff is an "actual or potential defendant in any criminal proceeding either pending

10  or reasonably likely to follow from the incident in question"; (6) the police investigation has

11  been completed; (7) the Internal Affairs investigations are now closed[5]; (8) there is no

12  indication that Plaintiff's suit is frivolous or has been brought in bad faith; (9) the

13  information that Plaintiff is seeking is not available through other discovery or from other

14  sources; and (10) the information sought may be important to the plaintiff's case.

15      Accordingly, Defendant is **ORDERED** to produce File/Bates Numbers IA 001-081 and

16  IA 197-384 to Plaintiff subject to the stipulated protective order which will be filed along

17  with this Order and with the redactions discussed in section B below.

18  **B.    Redaction**

19      Defendants seek to redact "all personal information regarding the deputy and his or

20  her spouse and children, such as their social security numbers, driver's license numbers,

21  address, etc." and "the Department's findings regarding violations of internal Departmental

22  

23      [4]See Estate of Bui v. Westminster Police Department, 244 F.R.D. 591, 596 (C.D. Cal. Aug. 3, 2007)
24  (finding that "The fourth Kelly factor does not conclusively weigh for or against application of the privilege.
    While the WPD's IA report includes opinions, conclusions and evaluative summaries, it is still based on factual
25  investigations. These investigations are highly relevant and likely trustworthy given their protection against use
    in criminal proceedings and the relatively immediate timing of the investigations after the incident"); see also
26  Dowell, 275 F.R.D. at 618 (finding that that fourth factor was not instructive because"[w]hile the report includes
    opinions, conclusions, and evaluative summaries, it is still based on factual investigations.  As articulated in
27  Kelly, there is no reason to doubt the veracity of the investigating officers any more than there is to doubt the
    veracity of the witnesses).

28      [5]See IA 004, 050, and 258.

1   policies and procedures." Decl. of Anthony Giammarino.  The Court **GRANTS** Defendants'

2   request to redact all personal information regarding the Deputy including: spouse and

3   children names, date of birth, social security numbers, medical records, driver's license

4   numbers, vehicle license plate numbers, telephone numbers, and addresses.   Defendants

5   are ordered to also redact the personal information of any complainants and witnesses.

6   Defendants are, however, required to provide the names of any witnesses, complainants,

7   and officers involved in the investigation.  The Court **DENIES** Defendants' request to redact

8   all findings regarding violations of internal Departmental policies and procedures.   As

9   discussed above, the protective order provides adequate protection and Defendants have

10  not established that the release of such information pursuant to a protective order will chill

11  any governmental self-evaluation or impose any other undue negative consequence.

12  **C.      Performance Evaluations**

13        In addition to the documents discussed in section A, Plaintiff is seeking "[a]ny and

14  all performance evaluations of PALMER from January 1, 2007 to the present."[6]  ECF No. 16

15  at 2.  Plaintiff asserts that the evaluations are relevant to Plaintiff's claims "in the event

16  PALMER violated standard practices and procedures of the San Diego Sheriff's Department"

17  and because the "absence of materials documenting officer misconduct could tend to

18  suggest PALMER performed adequately and in accordance with departmental policies." Id.

19  at 3.

20        Defendants contend that performance evaluations "are not meant for public

21  consumption" and that disclosure of these types of documents "could have [a] substantial

22  negative and far-reaching impact on the County of San Diego." Id. at 8.  Defendants

23  further contends that supervisors may make different discipline decision out of concern that

24  their decisions may be disclosed in future litigation and that disclosure may have a "chilling

25  effect on what supervisors put in writing concerning employees." Id.  Finally, Defendants

26  argues that performance evaluations "constitute hearsay as well as inadmissible and

27  _____

28        [6]The Court notes that this is not one of the requests included in the copy of Plaintiff's Supplemental
    Requests for Production of Documents that the Court received.

1   irrelevant opinions and conclusions of persons who have not been named as expert or

2   percipient witnesses to Plaintiff's incident." Id.

3          The Court is unable to rule on whether or not Defendant Palmer's performance

4   evaluations should be turned over to Defendants at this time.  Defendants did not submit

5   any performance evaluations of Defendant Palmer to the Court for in camera review and

6   a review of Plaintiff's Supplemental Requests for Production of Documents shows that

7   Defendants only identified one document that was submitted (IA#051) as being responsive

8   to Plaintiff Request No. 25 which asks for "documents relating to or reflecting any

9   departmental discipline or reprimand of Defendant Elizabeth Palmer from November 1, 2007

10  to the present" and does not specify performance reviews.   If Defendant Palmer's

11  performance evaluations are still at issue, Plaintiff is **ORDERED** to file a motion requesting

12  the documents on or before **April 19, 2013**.  If such a motion is filed, Defendants are

13  ordered to file any opposition and deliver any potentially responsive documents to the

14  Chambers of Magistrate Judge Barbara L. Major for in camera review on or before **April 29,**

15  **2013**.  The Court will then take the matter under submission and no personal appearances

16  will be required.

17                                      **CONCLUSION**

18          Plaintiff's request for documents is **GRANTED IN PART AND DENIED IN PART**

19  as follows:

20      •    Within in ten (10) days of the date this Order is filed, Defendants shall

21            produce File/Bates Numbers IA 001-081 and IA 197-256 to Plaintiff, subject

22            to the stipulated protective order which will be filed along with this Order,

23            with the following redactions: personal information of Deputies, complainants

24            and witnesses including: spouse and children names, date of birth, social

25            security numbers, medical records, driver's license numbers, vehicle license

26            plate numbers, telephone numbers, and addresses, but **not** the names of

27            witnesses, complainants, and officers.

28      •    Within ten (10) days of the date this Order is filed, Defendants shall produce

1             File/Bates Numbers IA 257-384 to Plaintiff subject to the stipulated protective

2             order and pursuant to the terms apparently agreed upon by the parties.

3     •    Defendant is not ordered to produce File/Bates Numbers IA 082-196.

4     •    Within five (5) days of the date this  Order is filed, Defendants shall retrieve

5             from the Court's chambers all documents submitted for in camera review.

6     **IT IS SO ORDERED**.

7

8 DATED:  April 8, 2013

9

10                                   BARBARA L. MAJOR

11                                   United States Magistrate Judge