UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J. NEWELL,<br><br>    Plaintiff,<br>v.<br>COUNTY OF SAN DIEGO et al.,<br>    Defendants. | Case No. 3:12-cv-1696-GPC-BLM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>**(ECF NO. 25)** |

## INTRODUCTION

Plaintiff filed this action in the San Diego Superior Court on June 12, 2012, alleging Defendants violated his civil rights and committed other torts against him. (ECF No. 1-1.) Defendants removed the action to this Court on July 9, 2012. (ECF No. 1.) Before the Court is Plaintiff's Motion for Leave to File First Amended Complaint, which Plaintiff filed on July 15, 2013. (ECF No. 25.) Defendants have opposed the Motion. (ECF No. 31.) To date, the Court has not received a reply from Plaintiff. The Court deems Plaintiff's Motion suitable for disposition without oral argument. See CivLR 7.1.d.1. Having reviewed the parties' submissions and the applicable law, and for the reasons that follow, the Court will **DENY** Plaintiff's Motion.

## BACKGROUND

Plaintiff alleges that, on November 29, 2011, "he drove to the Chula Vista

branch of the San Diego Superior Court to see what excess law enforcement vehicles might be for sale." (ECF No. 1-1, Compl. ¶ 9.) Plaintiff alleges he "parked in a handicap parking space due to his damaged knee and he had a disability placard." (Id.) Plaintiff alleges he "saw several Ford Crown Victoria vehicles behind a chain link fence that he thought might be for sale," and that he "exited his vehicle and proceeded towards the vehicles taking a photo of a white Crown Victoria vehicle." (Id. ¶ 10.)

Plaintiff alleges he "decided to walk over to the garage to see if he could get more information about the Crown Victoria[] vehicles," and that, as he "was walking towards the garage, [d]efendant [Elizabeth Palmer ("Palmer")] suddenly appeared blocking Plaintiff's path and asked him why he was parked in a handicap parking space." (Id. ¶ 11.) Plaintiff alleges that he "replied that he was looking for a Crown Victoria vehicle to purchase for his private security company." (Id.)

Plaintiff alleges that Palmer "told Plaintiff that she did not believe him." (Id. ¶ 12.) Plaintiff alleges that he "then informed [Palmer] that he was a retired San Diego Police officer and that his badge and identification card were in his wallet which was on the front seat of his vehicle." (Id.) Plaintiff alleges that Palmer told him "to shut up and then took his cell phone out of his hands." (Id.) Plaintiff alleges that Palmer "then ordered Plaintiff to sit his ass on the bumper of his vehicle and not to move," and that Plaintiff complied with her orders. (Id.)

Plaintiff alleges that Palmer "continued to question why Plaintiff was at the Chula Vista courthouse," and "then made a call and suddenly some Deputy Sheriffs began jogging toward Plaintiff and [Palmer]." (Id. ¶ 13.) Plaintiff alleges that, "[once the Deputy Sheriffs were present, Plaintiff was questioned yet again by [Palmer] as to why he was at the Chula Vista courthouse." (Id.)

Plaintiff alleges that Palmer "then opened the door to Plaintiff's vehicle without his consent and grabbed Plaintiff's wallet." (Id. ¶ 14.) Plaintiff alleges that he "began to experience back spasms as a result of sitting on the edge of his bumper," and that when he "tried to get up to stretch his back, [Palmer] ordered Plaintiff to sit down," and

that "Plaintiff, once again, complied." (Id.)

Plaintiff alleges that Palmer then "went through Plaintiff's wallet and asked him who Lisa Khan was," to which "Plaintiff replied that Lisa Khan was his significant other." (Id. ¶ 15.) Plaintiff alleges that he asked Plaintiff about Lisa Khan's nationality and "whether she was born in the United States." (Id.)

Plaintiff alleges that Palmer "then ordered a Deputy Sheriff to pat Plaintiff down," and that the "Deputy Sheriff patted Plaintiff down in front of a steady stream of the general public as they walked by watching what was transpiring." (Id. ¶ 16.) Plaintiff alleges that Palmer then "asked Plaintiff what his Social Security Number was and where he was born." (Id.)

Plaintiff alleges that Palmer then "ordered Plaintiff to rise because the Sheriff Deputies wanted to take his photo." (Id. ¶ 17.) Plaintiff alleges that he "was told to stand against the wall of the garage and a Deputy Sheriff took his photo with a camera." (Id.) Plaintiff alleges that Palmer "then continued to go through Plaintiff's cell phone without his consent questioning him about the various photographs on his phone." (Id.)

Plaintiff alleges that Palmer then "ordered one of the Deputy Sheriffs at the scene to run Plaintiff's license plate while she continued to search the interior of Plaintiff's vehicle without his consent." (Id. ¶ 18.) Plaintiff alleges that Palmer then told him "that his vehicle registration was expired and that there was an outstanding warrant out for his arrest as well as that his license was suspended." (Id.) Plaintiff alleges that Palmer "then asked if his license was suspended for failure to pay child support." (Id.)

Plaintiff alleges that Palmer then told him "that a Deputy Sheriff was going to write him up for a moving violation citation for driving on a suspended license." (Id. ¶ 19.) Plaintiff alleges that Palmer then asked him "if he had any scars or tattoos." (Id.) Plaintiff alleges that Palmer then ordered him "to delete any photographs he took of any vehicles at the Courthouse," and that Palmer "kept Plaintiff's keys and told him that he had twenty minutes to have someone get his vehicle or the vehicle was going

to be towed." (Id.)

Plaintiff alleges that he "was eventually released without being charged with any crime," and that Defendants' actions caused Plaintiff "imminent apprehension of offensive contact to Plaintiff," and that "offensive contact with Plaintiff directly resulted." (Id. ¶¶ 20, 21.)

Plaintiff asserts four causes of action, including: (1) violation of his Fourth Amendment right to be free from unreasonable searches and seizures pursuant to 42 U.S.C. § 1983; (2) civil conspiracy to deprive Plaintiff of his civil rights; (3) negligent hiring, training, retention, and supervision/unlawful policy, custom, or habit; (4) intentional infliction of emotional distress; and (5) false arrest.

Plaintiff now wishes to add a cause of action for racial profiling in violation of his Fourteenth Amendment right to equal protection under the law. (ECF No. 25-1.) Plaintiff claims he has obtained information through discovery regarding Palmer's conduct and past history that "strongly suggests that [Plaintiff's] race (African-American) played a significant role in his unlawful detention on November 29, 2011."

## LEGAL STANDARD

Plaintiff moves for leave to amend pursuant to Federal Rule of Civil Procedure 15. Defendants correctly note in response, however, that the deadline to seek leave to amend pleadings passed on October 22, 2012. (See ECF No. 10 at 1.) Defendants thus assert that Plaintiff must "show good cause for the amendment." Defendants are only partly correct.

Ordinarily, Federal Rule of Civil Procedure 16(b)(4)'s good cause standard governs the modification of a Rule 16 scheduling order, which includes the deadline to seek leave to amend pleadings. This good-cause standard comports with Rule 6(b)(1), which provides: "When an act may or must be done within a specified time, the court may, for good cause, extend time . . . ." Rule 6, however, provides more specificity regarding the timing of a request to extend a deadline.

Rule 6 provides that, if a motion to extend is made after a deadline has expired,

the motion to extend may only be granted "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Thus, if a party wishes to seek leave to amend its pleadings after the deadline to do so has passed, the party must demonstrate both good cause for modifying the scheduling order, in addition to demonstrating excusable neglect for having missed the deadline. See O'Banion v. Select Portfolio Servs., Inc., 2011 U.S. Dist. Lexis 133116, at * 13-15 (D. Idaho Nov. 16, 2011) (applying Rules 6 and 16 to motion for leave to file amended complaint that was filed after deadline to file such a motion had passed); Weil v. Carecore Nat'l, LLC, 2011 WL 1938196, at *2 (D. Colo. May 19, 2011) (observing that other courts "have held that a party moving to amend a pleading after a scheduling order deadline has passed must support the motion by demonstrating both excusable neglect and good cause"); see also Yeoman v. Ikea U.S.A. West, Inc., 2013 U.S. Dist. Lexis 96270, at *11-14 (S.D. Cal. July 10, 2013) (applying Rules 6 and 16 to motion for leave to extend discovery deadlines after deadlines passed).

In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993), the United States Supreme Court established a four-part balancing test for determining whether there has been "excusable neglect." Although that case involved Federal Rule of Bankruptcy Procedure 9006(b)(1), the Court reviewed the various contexts in which the phrase appears in the Federal Rules of Civil Procedure and made clear that the test applies in all of those contexts. Id. at 395. The factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. Id. The Pioneer test requires a flexible approach whereby no one factor is more significant than any other. Id. at 395 n.14. The Court cautioned against "erecting a rigid barrier against late filings attributable in any degree to the movant's negligence." Id. at 395 n.14. The weighing of the Pioneer factors is left to the discretion of the court. Pincay v. Andrews, 389 F.3d

853, 860 (9th Cir. 2004).

The good cause standard primarily considers the party's diligence in seeking to modify a scheduling order. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). The focus of the inquiry is on the moving party's reasons for seeking modification; "[i]f that party was not diligent, the inquiry should end." Id. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.

## DISCUSSION

Plaintiff asserts he should be granted leave to amend his Complaint "so that this case and all of the issues and parties can be litigated in one judicial proceeding." Plaintiff asserts: "If this motion is not granted, ROLLINS[1] will have no choice but to dismiss the instant action without prejudice and file the proposed First Amended Complaint as an original action." Plaintiff asserts, "Another alternative would be to file the proposed First Amended Complaint as a new lawsuit and then move to consolidate this matter with the new lawsuit," and thus, "[i]t is in the interests of justice, judicial economy and judicial efficiency to grant this motion."

In response Defendants argue that, in addition to Plaintiff's failure to demonstrate good cause to extend the pleading-amendment deadline, "Plaintiff has not shown any newly discovered information or evidence," nor "shown why he could not have added these allegations before the deadline to amend expired."

Defendants further argue that "the proposed FAC does not allege any facts showing any defendant officer acted in an intentionally discriminatory manner, or that discrimination was the motivating factor for any officer's action."

As far as the Court can tell from a side-by-side comparison of Plaintiff's initial Complaint and Plaintiff's proposed FAC, the only additions to Plaintiff's allegations occur at paragraphs 32 and 34. Paragraph 32 of Plaintiff's initial Complaint reads:

---

[1] It is unclear who "ROLLINS" is; the Court will, however, assume that counsel for Plaintiff intended to refer to Plaintiff.

>At all times herein mentioned, Defendants, and each of them, in doing the acts set forth herein, violated, among others, the following constitutional rights of Plaintiff:
>
>>A.  Plaintiff's FOURTH AMENDMENT right to be free from unlawful detentions and seizures

Paragraph 32 of the proposed FAC merely adds the following subparagraph:

>>B.  Plaintiff's FOURTEENTH AMENDMENT right to equal protection under the law.

Paragraph 34 of Plaintiff's initial Complaint reads:

>As a further and direct proximate result of said unlawful detention and illegal search and seizure and of the acts, conduct and omissions of Defendants, and each of them, Plaintiff, being an [sic] United States citizen, was subjected to deprivations of his rights, privileges and immunities secured by both the Constitutions of the United Sates and California sustaining violations of his civil rights and was hurt in his health, strength and activity, sustaining serious injury to his nervous system and person, all of which injuries have caused and continue to cause and will in the future cause Plaintiff great mental and nervous pain and suffering.

Paragraph 34 of the proposed FAC merely inserts "racial profiling" at the beginning of the paragraph, so that it reads:

>As a further and direct proximate result of said racial profiling, unlawful detention and illegal search and seizure and of the acts, conduct and omissions of Defendants . . . .

While a plaintiff need not provide "detailed factual allegations" to state a cause of action, a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969

(9th Cir. 2009).

To state an equal protection claim for racial profiling, a plaintiff "must produce evidence to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision . . . was racially motivated." Bingham v. Manhattan Beach, 342 F.3d 939, 949 (9th Cir. 2003) (citations, quotation marks, & brackets omitted), overruled on other grounds by Virginia v. Moore, 553 U.S. 164 (2008); see also Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995) (stating that "a long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory intent or motive").

Here, Plaintiff has not demonstrated good cause to extend the pleading-amendment deadline and excusable neglect for having missed the deadline. Even if he had, Plaintiff's proposed FAC fails to plausibly state a claim for racial profiling in violation of the Fourteenth Amendment's Equal Protection Clause. While Plaintiff references Palmer's past history, Plaintiff does not incorporate that history into his proposed FAC. And while he asserts it in his Motion, Plaintiff does not allege that he is African-American in his proposed FAC. Plaintiff's proposed FAC is therefore devoid of any allegations demonstrating that any of the Defendants acted with a discriminatory intent or motive as required to state an Equal Protection claim.

## CONCLUSION & ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint, (ECF No. 25), is **DENIED**. The Court, however, denies Plaintiff's Motion **WITHOUT PREJUDICE**. Plaintiff is advised that any future motion for leave to amend his Complaint to add an Equal Protection claim must not only address the aforementioned pleading deficiencies, but must also demonstrate good cause for extending the pleading amendment deadline and excusable

/ / /

/ / /

/ / /

neglect for having missed the deadline.

**IT IS SO ORDERED.**

DATED: October 15, 2013

HON. GONZALO P. CURIEL
United States District Judge

Case 3:12-cv-01696-GPC-BLM   Document 32   Filed 10/15/13   PageID.163   Page 9 of 9

neglect for having missed the deadline.

**IT IS SO ORDERED.**

DATED: October 15, 2013

HON. GONZALO P. CURIEL
United States District Judge

9

3:12-cv-1696-GPC-BLM

...

neglect for having missed the deadline.

**IT IS SO ORDERED.**

DATED: October 15, 2013

HON. GONZALO P. CURIEL
United States District Judge