UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J. NEWELL,<br><br>　　　　　　Plaintiff,<br>v.<br>COUNTY OF SAN DIEGO et al.,<br><br>　　　　　　Defendants. | Case No. 3:12-cv-1696-GPC-BLM<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF NO. 36)** |

## INTRODUCTION

Before the Court in this civil-rights case is defendants County of San Diego ("County") and Elizabeth Palmer's ("Palmer") (both, "Defendants") Motion for Summary Judgment ("Motion"). (ECF No. 36.) Plaintiff filed an opposition to Defendants' Motion, (ECF No. 39), and Defendants have filed a reply, (ECF No. 41).[1] On March 14, 2014, the Court held a hearing on Defendants' Motion, at which counsel for Plaintiff and Defendants appeared. (ECF No. 43.) At the hearing, the Court invited the parties to file supplemental briefing, which they did. (ECF Nos. 44, 45, 47.) Having reviewed the parties' submissions and the applicable law, and for the reasons

---

[1] Plaintiff correctly notes that Defendants failed to comply with the undersigned's chambers rule requiring a separate statement of undisputed material facts to be filed with motions for summary judgment. Plaintiff, however, failed to comply with this District's Civil Local Rule 7.1.h., which requires briefs and memoranda exceeding ten pages to have tables of contents and authorities. Given the parties' respective failures to comply with this Court's procedural rules, the Court will take no action at this time.

that follow, the Court will **GRANT** Defendants' Motion.

## **BACKGROUND**[2]

In June 2012, Plaintiff filed this case in the San Diego Superior Court, asserting causes of action for: (1) violation of civil rights under 42 U.S.C. § 1983; (2) conspiracy; (3) negligent hiring, retention and supervision/unlawful policy, custom or habit; (4) intentional infliction of emotional distress; and (5) false arrest. (ECF No. 1-1.) Defendants removed the action to federal court in July 2012, (ECF No. 1), and discovery concluded in August 2013, (ECF No. 15).

Plaintiffs claims arise from an incident that occurred in the parking lot of the Chula Vista branch of the San Diego Superior Court. A portion of the parking lot is enclosed with a fence. This fenced-off portion of the parking lot, which ordinarily holds law-enforcement and courthouse-employee vehicles, is not open to the public. The fenced-off portion has at least two entry points: a vehicle entrance, which is sometimes left open during the day for the ingress and egress of authorized vehicles, and a pedestrian entrance, which is approximately 100 to 150 feet away from the vehicle entrance and which is secured with a keypad lock.

Between 4:00 p.m. and 5:00 p.m. on November 29, 2011, Palmer, a San Diego County Sheriff's Department sergeant in charge of security at the Chula Vista courthouse, was leaving work dressed in plain clothes and driving her personal vehicle when she observed Plaintiff pull into the public portion of the courthouse parking lot.

Driving quickly through the parking lot, Plaintiff parked his truck in a disabled space next to the pedestrian entrance to the private portion of the parking lot. It is unclear whether a disabled placard was displayed in or on Plaintiff's truck. Plaintiff does not dispute that he was parked at an angle across the space, but Plaintiff does dispute Palmer's assertion that his truck was parked outside the space's lines. Plaintiff, a retired San Diego Police Department ("SDPD") officer, asserts he went to the parking lot to look at law-enforcement vehicles that he believed he could purchase for a private

---

[2] The following facts are undisputed unless otherwise indicated.

security company that he wanted to start.

After parking, Plaintiff remained in his truck for a short time then got out to look at the law-enforcement vehicles inside the fenced-off portion of the lot. Palmer claims Plaintiff walked quickly toward the pedestrian gate, where he unsuccessfully tried several times to punch in a code on the keypad lock. Palmer claims, when Plaintiff was unable to open the keypad lock, he leaned over the fence and began photographing the vehicles inside the private portion of the lot. Palmer further asserts that, after taking the photographs, Plaintiff looked around as if to see if anybody was watching.[3] Plaintiff disputes these facts, claiming he never attempted to open the pedestrian gate and that, while he did take two pictures of a law-enforcement vehicle inside the private portion of the lot, he did not lean over the fence.[4]

Plaintiff asserts that, after he took the two photographs, he began walking toward a maintenance area to ask about the vehicles in the private portion of the lot. Plaintiff asserts it was around this time that he noticed Palmer in her vehicle coming toward him. Plaintiff began walking back to his truck.

Palmer drove her vehicle toward Plaintiff and parked it behind Plaintiff's truck. Plaintiff claims that, around this time, Palmer approached Plaintiff, asked him what he was doing, grabbed his phone and keys from his hands, then backed up to stand behind the driver's door of her vehicle. Palmer claims she did not approach Plaintiff before asking him what he was doing, but instead stood behind the driver's door of her vehicle out of safety concerns. Palmer asserts Plaintiff responded by saying, "San Diego P.D., I got this." (ECF No. 36-2, Palmer Decl. ¶ 4.) Plaintiff asserts he responded by saying, several times, "I'm a retired San Diego police officer." (ECF No. 39-2 at 8.)

Palmer then identified herself as a sheriff's sergeant before instructing Plaintiff

---

[3] A few months prior to this incident, Palmer had received "training on potential terrorist activities," in which she learned to watch for persons conducting surveillance on public buildings, including taking photographs or video of such buildings and the grounds around them.

[4] The Court notes that Plaintiff's account of not leaning over the fence is supported by the fact that the top of the fence is lined with barbed wire. (See ECF No. 36-2, Palmer Decl., Exs. A & B.)

to sit on his bumper, which he did. Palmer called for backup, and two sheriff's deputies arrived on scene a few minutes later.

Palmer asked Plaintiff for identification, which Plaintiff said was on the front seat of his truck. Palmer asserts Plaintiff consented to her going into his truck to get his identification. One of the deputies at the scene claims he heard Plaintiff give Palmer such consent. Plaintiff denies giving Palmer such consent. Either way, Palmer went into Plaintiff's truck and took out his wallet. Plaintiff asserts Palmer then began taking everything out of his wallet and laying its contents on the bed of Plaintiff's truck.

After discovering Plaintiff's SDPD badge, Palmer called SDPD to verify that Plaintiff was in fact a retired SDPD officer. SDPD verified Plaintiff's account. Palmer also called the Chula Vista Police Department ("CVPD"), which has jurisdiction over the area in which the courthouse is located, and asked for a unit to be sent to the courthouse to investigate. The CVPD responded that it would send a unit but did not know how long that would take.

Palmer and the deputies then questioned Plaintiff about why he was there. Plaintiff explained he was there because he had heard he could buy used law-enforcement vehicles at the courthouse. Palmer and the deputies claim Plaintiff's story changed as he was asked questions, but Plaintiff claims he was not able to speak clearly because Palmer kept telling him to shut up and that he was lying.

Palmer then asserts she asked Plaintiff if he had any paperwork for his truck and that Plaintiff responded that his registration was in the glove box. Palmer claims she asked for and received consent to get Plaintiff's paperwork from the glove box. Palmer also claims she asked for and received consent to "look[] around the inside of the truck." Plaintiff denies that he consented to Palmer retrieving his registration or otherwise searching his vehicle.

In searching through the papers and other effects in Plaintiff's truck, Palmer did not find any registration paperwork. Palmer did, however, find an unopened envelope

from the Social Security Administration addressed to a "male with a Middle Eastern last name."[5]

Palmer claims she then called the Sheriff's Communication Center to run a check on Plaintiff's license and registration. Palmer asserts she received word that Plaintiff's license was suspended and therefore confiscated Plaintiff's license. Plaintiff disputes that his license was suspended. Plaintiff does not dispute, however, that his registration expired in 2009 or that his license plate bore a 2011 registration tag. Although, Plaintiff asserts he did not know how or why there was a 2011 registration tag on his license plate.

Palmer called the CVPD again to determine how long it would be before a unit arrived. CVPD again responded that it did not know how long it would take. Palmer therefore decided to release Plaintiff if he promised to fix his license and registration problems the next day. Plaintiff promised to do so. One of the deputies also had Plaintiff sign a form stating he had been notified that his license was suspended. Palmer then allowed Plaintiff to call for a ride home.

It took approximately thirty minutes for Plaintiff's girlfriend and her son to arrive. Once Plaintiff's girlfriend and her son arrived, the deputies asked to see their drivers licenses, which the deputies ran through the National Criminal Information Center. Plaintiff asserts this took an additional twenty to thirty minutes.

Palmer asserts Plaintiff was detained for a total of approximately 30-35 minutes. Plaintiff asserts he was detained for approximately 90 minutes.

## **LEGAL STANDARD**

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v.

---

[5] The envelope was addressed to the son of Plaintiff's girlfriend.

Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. Where the moving party does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating "there is an absence of evidence to support the non-moving party's case." Id. at 325.

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotations omitted).

## DISCUSSION

Plaintiff concedes summary judgment should be entered in Defendants' favor on Plaintiff's second (conspiracy) and third (negligent hiring, retention and supervision/unlawful policy, custom or habit) causes of action. (ECF No. 39 at 2.) The Court will therefore address whether Defendants are entitled to summary judgment on Plaintiff's claims that Palmer's conduct violated Plaintiff's civil rights, constituted intentional infliction of emotional distress, and/or constituted false arrest.

**I.     Civil Rights**

Plaintiff asserts his § 1983 claim against Palmer only. Before liability may be imposed under § 1983, a plaintiff must demonstrate: (1) the defendant acted under color of law, and (2) the defendant's conduct deprived the plaintiff of a constitutional right. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985). It is undisputed that Palmer acted under color of law. Palmer claims, however, that she is entitled to summary judgment on Plaintiff's § 1983 claim because she did not violate Plaintiff's constitutional rights. Palmer argues this is because (1) she had a reasonable suspicion that Plaintiff might be involved in criminal and/or terrorist activity; (2) California law provides for a limited identification search of a vehicle; and (3) she is entitled to qualified immunity.

**A.     Reasonable Suspicion**

The Fourth Amendment prohibits unreasonable searches and seizures. In evaluating the reasonableness of an investigative stop, the issue is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). A valid investigatory stop must be temporary, based upon reasonable suspicion, and last no longer than necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500 (1983).

"'[R]easonable suspicion' is a less demanding requirement than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Reasonable suspicion requires a "reasonable, articulable suspicion that criminal activity is afoot." Id.

> The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.

Ornelas v. United States, 517 U.S. 690, 696 (1996).

In making reasonable-suspicion determinations, a court looks at the "totality of

the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. See, e.g., United States v. Cortez, 449 U.S. 411, 417-418 (1981). This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Id., at 418. See also Ornelas v. United States, 517 U.S. at 699 (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers).

In evaluating whether the length of an investigatory stop is unreasonable, "common sense and ordinary human experience must govern over rigid criteria." United States v. Sharpe, 470 U.S. 675, 685 (1984).  One must "consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes."  Id.  "[I]n assessing the effect of the length of the detention, [courts] take into account whether the police diligently pursue their investigation." United States v. Place, 462 U.S. 696, 709 (1983).

### 1. Initial Detention

Palmer asserts the following "articulable" facts gave her reasonable suspicion to initially detain Plaintiff: "Plaintiff was outside a public courthouse trying to gain access to a fenced, secured parking lot that contained the vehicles of courthouse staff and law enforcement officers, and when he couldn't get into the lot, he began photographing the vehicles." (ECF No. 36-1 at 12-13.) Palmer provides the declaration of a law-enforcement "expert," stating Palmer's actions were consistent with proper law-enforcement activity. Palmer also provides the declaration of a terrorism "expert," stating Plaintiff's behavior was consistent with potential terrorist activity.  The conclusions reached in these declarations, however, are based on Palmer's version of events—i.e., that Plaintiff was attempting to gain access to the fenced-off, secured portion of the parking lot by punching in numbers on the keypad lock and, when unsuccessful, began taking pictures of the vehicles therein.

Palmer asserts the length of Plaintiff's detention was not unreasonable, given that "within an hour, the deputies had confirmed Plaintiff's identity, checked with the [SDPD] and [CVPD], run Plaintiff's data through the Department of Motor Vehicles, had Plaintiff sign the license suspension acknowledgment form, and worked out a plan for Plaintiff to be driven home by someone else."

Plaintiff claims Palmer's terrorism justification is a post-hoc rationalization for her decision to unconstitutionally seize and detain Plaintiff. In support of this argument, Plaintiff notes a report filled out by deputies at the time of the incident lists the only potential crime as a violation of California Vehicle Code Section 22507.8, which pertains to disabled parking spaces. Plaintiff further argues that, assuming Palmer was investigating potential terrorist activity, Palmer's terrorism investigation should have concluded when she confirmed Plaintiff was in fact a retired SDPD officer.

Here, the undisputed facts are that Plaintiff, driving quickly through the public portion of a courthouse parking lot, parked askew in a disabled parking space, exited his vehicle and looked around, and then took two photographs of a law-enforcement vehicle parked in the private, though possibly unsecured, portion of the same lot.[6] After Plaintiff took photographs, he began walking toward what Plaintiff thought was a maintenance area but reversed course and headed back toward his truck when he saw Palmer drive toward his truck in her unmarked personal vehicle.

Watching Plaintiff's actions, Palmer became suspicious that he might be involved in or about to be involved in criminal activity. Palmer thought that Plaintiff might be "casing" the private lot and/or the vehicles to damage or steal the vehicles or that he might be involved in precursor terrorist activities. (ECF No. 36-1 at 9.) A few months before the encounter with Plaintiff, Palmer had received training on potential terrorist activities to look for, including the photographing and surveillance of public buildings. (Id. at 10.)

---

[6] While a fence separates the public and private portions of the parking lot, Palmer explains the private portion of the lot is unsecured at times to permit vehicles to enter and exit throughout the day. (See ECF No. 36-2, Palmer Decl. ¶ 5.)

The court finds that the totality of the circumstances supports the initial detention of Plaintiff. An objectively reasonable officer in charge of courthouse security, who had just observed an individual taking photographs of one or more courthouse-employee and/or law-enforcement vehicles parked in the private portion of the courthouse parking lot, would–at a minimum–contact the individual to ascertain his or her intentions. The Court thus concludes Palmer is entitled to summary judgment on the issue of whether her initial detention of Plaintiff was based on reasonable suspicion. The remaining issue is whether the length of Palmer's investigatory stop was unreasonable given the reason for the stop.

### 2.     Length of Detention

Plaintiff claims he was detained for a total of 90 minutes, which <u>includes</u> the time Plaintiff spent waiting for his girlfriend to pick him up and the time the deputies spent running checks on Plaintiff's girlfriend and her son before releasing Plaintiff. Palmer asserts Plaintiff was detained for a total of 30 to 35 minutes, which <u>excludes</u> the time Plaintiff spent waiting for his girlfriend and the time the deputies spent running checks on Plaintiff's girlfriend and her son.

Once Plaintiff was temporarily detained, it was lawful and appropriate for the deputies to attempt to determine Plaintiff's identity. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984); <u>United States v. Christian</u>, 356 F.3d 1103 (9th Cir. 2003). Additionally, given that Plaintiff had driven to the courthouse in his truck and would be leaving in his truck, Palmer was entitled to confirm the status of Plaintiff's driver's license and vehicle registration so long as she diligently pursued the investigation and did not unreasonably prolong the detention. <u>United States v. Sharpe</u>, 470 U.S. 675, 685 (1985).

Plaintiff does not dispute that his and Palmer's interaction lasted 30 to 35 minutes before Plaintiff was allowed to call his girlfriend. Neither does Plaintiff dispute that, once Palmer discovered Plaintiff's false registration tab, she had probable cause to arrest Plaintiff. <u>See</u> Cal. Veh. Code § 4463 (making intentional display of

false registration tabs a felony).

Before Palmer discovered Plaintiff's false registration tab, Palmer had asked Plaintiff for his identification, searched Plaintiff's truck for his wallet, checked Plaintiff's wallet for identification, called SDPD to determine whether Plaintiff was a retired SDPD officer, called CVPD to ask whether they wanted to send a unit to the scene, searched Plaintiff's truck for his registration, called the Sheriff's Communication Center to run Plaintiff's driver's license and license plate, and finally received word that Plaintiff's registration had expired in 2009.  Thus, even though it is unclear how long it took for Palmer to discover Plaintiff's false registration tab, Palmer asserts these activities were reasonably related to her initial detention of Plaintiff and that conducting these activities did not unreasonably prolong Plaintiff's detention.  Plaintiff asserts that, once Palmer confirmed Plaintiff's identity as a retired SDPD officer, Palmer's suspicion of criminal activity should have been dispelled.

Here, the Court concludes Palmer's 30 to 35-minute detention of Plaintiff was not unreasonable.  While a report filled out after the incident indicates Plaintiff was being investigated for violating a Vehicle Code section related to disabled parking spots, Palmer's purpose in stopping Plaintiff was to investigate her suspicions that Plaintiff was "casing" the parking lot and/or engaged in precursor terrorist activities.  Given this purpose, the Court finds Plaintiff's 30 to 35-minute detention was not unreasonable because, during that time, Palmer was diligently pursuing her investigation as described above.  The Court rejects Plaintiff's assertion that Palmer's investigation should have stopped once she "confirmed" Plaintiff's identity as a retired SDPD officer.  Palmer did not confirm that Plaintiff was a retired SDPD officer.  The only evidence on this point demonstrates that someone with the SDPD said Plaintiff's name sounded familiar.  As such, the Court finds that the period between Plaintiff's initial detention and the moment Palmer discovered Plaintiff's false registration tabs was not unreasonable in length.

Having considered the reason for and length of Plaintiff's detention, the Court

finds Palmer is entitled to summary judgment on the issue of whether her detention and questioning of Plaintiff was unreasonable.

### B.     Identification Search

Plaintiff claims his Fourth Amendment rights were violated when Palmer searched his truck for identification without consent. Palmer claims that California law allows an officer to conduct a limited warrantless search of a vehicle for the purpose of locating registration and related identifying documentation. California law, however, does not govern the issue of whether Palmer's search of Plaintiff's truck violated the Fourth Amendment.

The federal cases Palmer relies on to justify her search of Plaintiff's truck do not stand for the general proposition that law enforcement may search vehicles to determine ownership of a vehicle without a warrant, an exception to the warrant requirement, or consent. See United States v. $109,179 in U.S. Currency, 228 F.3d 1080, 1088 (9th Cir. 2000) (concluding law-enforcement officer did not engage in unreasonable search when officer put car key into car door to determine whether key belonged to car but did not open the car door); United States v. Brown, 470 F.2d 1120, 1122 (9th Cir. 1972) (concluding limited search of vehicle for purposes of ascertaining vehicle registration was justified where driver failed to produce driver's license as state law required, responded vaguely to question regarding vehicle ownership, failed to produce vehicle registration as state law required, and was found in illegal possession of chemical mace); Cotton v. United States, 371 F.2d 385, 393 (9th Cir. 1967) (concluding the mere opening of a vehicle door for purposes of looking at the vehicle's serial number, where the law-enforcement officer had reliable information that the car was stolen, did not violate Fourth Amendment).

None of the circumstances that justified non-consensual vehicle searches to ascertain vehicle ownership in the foregoing cases are present here. Palmer does not assert that Plaintiff was under arrest, in possession of contraband, or otherwise evasive. The Court therefore concludes that Palmer is not entitled to summary judgment on the

issue of whether her search of Plaintiff's truck was unreasonable.

### C. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Malley v. Briggs, 475 U.S. 335, 341 (1986).

Qualified immunity is an issue that should ordinarily be decided as a matter of law at the earliest possible stage of a case. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial."). Thus, on summary judgment, a court "appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." Harlow, 457 U.S. at 818; see also Davis v. Scherer, 468 U.S. 183, 183 (1984) (holding that "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue").

Whether a right was clearly established at the time an action occurred "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.

Palmer claims she is qualifiedly immune from liability because California law permitted her to conduct a limited search of Plaintiff's truck for his license and registration. Vehicle Code § 4462(a) requires a driver of a motor vehicle to present the registration or identification card or other evidence of registration of any vehicle under

his or her immediate control for examination upon demand of any peace officer. The California Supreme Court has held that a limited warrantless search for automobile registration, driver's license, or identification documentation does not violate the Fourth Amendment during a valid traffic stop when the driver fails to produce the documents prior to a traffic citation. In re Arturo D. (2002) 27 Cal.4th 60, 86 [limited warrantless searches for required registration and identification documentation are permissible when, following the failure of a traffic offender to provide such documentation to the citing officer upon demand, the officer conducts a search for those documents in an area where such documents reasonably may be expected to be found].

The Ninth Circuit has held that, when a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity. See Grossman v. City of Portland, 33 F.3d 1200, 1210 (9th Cir.1994) (holding that "an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability"). The existence of an authorizing statute is not dispositive, however. Qualified immunity does not extend to a public official who enforces a statute that is "patently violative of fundamental constitutional principles." Id. at 1209.

In response, Plaintiff argues only that he had a "clearly established constitutional right to be free from unreasonable seizures . . . without having a reasonable suspicion that [Plaintiff] was engaged in illegal activity." (ECF No. 39 at 9.) In his supplemental briefing, Plaintiff cites to Liberal v. Estrada, 632 F.3d 1064 (9th Cir. 2011), for the proposition that the "constitutional right to be free from unreasonable seizures by initiating a traffic stop without having a reasonable suspicion that the suspect was engaged in illegal activity" is "clearly established" for purposes of qualified immunity. (ECF No. 45 at 2.) In other words, Plaintiff argues he need not articulate a more specific "clearly established" right to overcome Palmer's claim of qualified immunity.

The Court begins with the second stage of the qualified immunity analysis: was

the right Plaintiff claims was violated "clearly established" at the time of his contact with Palmer. Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (adopting "flexible approach" of deciding which of the two qualified-immunity prongs to address first) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

The relevant inquiry is whether, in light of clearly established law and the information Palmer possessed, a reasonable officer could have behaved in the same manner as did Palmer. See Wilson, 526 U.S. at 615 ("appropriate question is the objective inquiry whether a reasonable officer could have believed [her actions] w[ere] lawful, in light of clearly established law and the information the officers possessed").

The Court finds that both Liberal, 632 F.3d at 1076, and Polk, 121 F. Supp. 2d at 68, stand for the proposition that the broad constitutional right to be free from seizure without reasonable suspicion or probable cause is "clearly established" for purposes of qualified immunity. However, focusing on the specific facts of this case, the Court finds Palmer was entitled to conduct a limited search for license and registration under California law. Plaintiff has failed to offer any authority clearly establishing that an officer in Palmer's situation was not entitled to qualified immunity for her limited search of Plaintiff's vehicle. Accordingly, Palmer is entitled to qualified immunity against Plaintiff's claim for damages under § 1983.

Because the Court concludes Palmer is entitled to qualified immunity for the conduct that Plaintiff alleges violated his Fourth Amendment rights, the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's first cause of action against Palmer under § 1983. See Saucier, 533 U.S. at 200-01 (observing that qualified immunity is "an immunity from suit rather than a mere defense to liability").

## II. Intentional Infliction of Emotional Distress

Plaintiff asserts his IIED claim against Palmer and the County. "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[s] suffer[ed]

severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993)).

While Plaintiff argues Palmer's conduct was outrageous, Plaintiff fails to offer evidence as to the remaining elements of an IIED claim. Plaintiff claims, for example, that he suffered great humiliation, but Plaintiff cites to no evidence supporting this assertion, and the Court is not required to "scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)). Plaintiff has also failed to show that Palmer possessed the requisite intent or reckless disregard to cause emotional distress. Consequently, the Court will grant Defendants' Motion as to this claim.

**III. False Arrest**

Plaintiff asserts his false-arrest claim against Palmer and the County. Under California law, false imprisonment and false arrest are considered the same tort, as "false arrest is but one way of committing false imprisonment." Collins v. San Francisco, 50 Cal. App. 3d 671, 673 (1975). False imprisonment is committed through the "nonconsensual, intentional confinement of a person, without lawful privilege, for any appreciable length of time, however short." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994) (quotation marks & citation omitted).

Other than reciting the elements of a false-arrest claim, Plaintiff provides no substantive argument or citation to evidence demonstrating that a dispute of material fact exists with regard to his false-arrest claim. Notwithstanding, it is undisputed that Plaintiff was detained for an appreciable length of time (whether 30 or 90 minutes) and that Plaintiff's detention was intentional. And, given the fact that Plaintiff was attempting to return to his truck to leave the parking lot when Palmer stopped him, along with the fact that Palmer commanded Plaintiff to remain seated on his bumper while she questioned him, the Court finds it is undisputed that Plaintiff's detention was

nonconsensual. While Palmer was driving her personal vehicle when she first contacted Plaintiff, Palmer declares that she identified herself as a Sheriff's sergeant before commanding Plaintiff to sit on the bumper of his truck and even before she asked Plaintiff for identification.

The only remaining issue is whether Palmer had a lawful privilege to detain Plaintiff. Because the Court has found the reason for and length of Plaintiff's detention were not unreasonable under the Fourth Amendment, the Court concludes Palmer had a lawful privilege to detain Plaintiff up until the time she discovered Plaintiff's false registration tabs, after which point she had probable cause to arrest Plaintiff. Because Palmer had a lawful privilege to detain Plaintiff at all points during their interaction, the Court will grant Defendant's Motion as to this claim.

## CONCLUSION & ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment, (ECF No. 36), is **GRANTED** in its entirety.
2. The Clerk of Court is directed to enter **FINAL JUDGMENT** in favor of Defendants County of San Diego and Elizabeth Palmer and against Plaintiff Timothy J. Newell on each of Plaintiff's causes of action for (1) violation of civil rights under 42 U.S.C. § 1983; (2) civil conspiracy; (3) negligent hiring, training, retention and supervision/unlawful policy, custom or habit; (4) intentional infliction of emotional distress; and (5) false arrest. Plaintiff shall take nothing by this action.

DATED: May 28, 2014

HON. GONZALO P. CURIEL
United States District Judge